3-15-0743, People of the State of Illinois, Appalachia, by Stephanie Raymond v. Allen v. Ammons, Jr., Appalachia, by April Quintala Thank you. Ms. Quintala, good morning. Good morning. My name is April Quintala and I represent Defendant Appellant Melvin Ammons on behalf of the Office of the State Appellant Defender. There are six issues presented in this appeal. The first, third, fourth, and fifth issues are essentially four ways of looking at a single problem, namely that Mr. Ammons did not receive a fair trial because numerous errors confuse and disrupt the jury in this case. The jury was given inherently confusing instructions for misleading prosecutorial remarks, and neither the trial court nor defense counsel made any effort to dispel the jury's confusion even after it became clear that the jury was, in fact, confused about the ultimate legal issue in this case. As this court has rightly recognized, combining the seemingly contradictory resisting arrest and self-defense instructions in the context of an aggravated battery case inherently risks jury confusion, and therefore instructions pertaining to the resisting arrest offense should not be given when a defendant charged only with aggravated battery asserts that he acted in self-defense. The resisting instructions, particularly 24-25-20 regarding a private person's use of force in resisting an arrest, basically inform the jury that a person who uses force against an officer during an arrest has no defense. The terms used in the self-defense and resisting arrest instructions invite confusion because they are neither defined nor used consistently. They do not differentiate between an unlawful arrest and unlawful force. A jury could easily conflate unlawful force and unlawful arrest and mistakenly conclude that a person may not use force to defend himself against an officer's use of unlawful force in any arrest scenario. The jury in this case clearly struggled to make that exact distinction. Its fifth question to the court asked, once you are put under arrest, do you have the right to defend yourself against what you think is unlawful force? The jury's confusion was thus understandable. Even for a legal practitioner, it is difficult to glean how an arresting officer might use unlawful force where the resisting instructions state that an officer affecting a lawful arrest may use any force which he reasonably believes to be necessary and that a person is patently prohibited. from using any force to resist even an unlawful arrest. Read together, those instructions seem to stand for the propositions that one, force used by an officer can never be deemed unlawful where he is affecting a lawful arrest and two, a person can never use any force against an arresting officer regardless of whether his arrest is lawful or not. Which was the question being asked by the jury? Yes, Your Honor. Basically? Yeah, exactly. What is the law on that? Exactly, that's exactly what the jury asked. Once you are put under arrest, do you have the right to defend yourself against what you think is unlawful force? And contrary to the trial court and the prosecutor's apparently mistaken impression that the answer to that question was no, the self-defense instructions as well as People v. Bailey clearly indicate that that question should have been answered in the affirmative. The prejudicial effect of combining the resisting arrest and self-defense instructions where a defendant charged only with aggravated battery argues that he acted in self-defense could not have been more clearly stated than it was in this court's decision in People v. English. In that case, this court acknowledged that the resisting arrest instructions effectively informed the jury that the defendant is, quote, not authorized to use any force against a police officer in the course of an arrest. Justice Gouder recognized that same problem in his partial dissent in People v. Witnowski. He said, as a term of art, unlawful arrest may refer to the absence of legal cause for making the arrest, but it may also include the method of executing the arrest. By making no exception to the unlawfulness which the offender is prohibited from opposing, the instruction justifies both unlawful cause as well as means. The instruction purports to prohibit a defendant from opposing any arrest, even if the arrest be unlawful, without in any way suggesting that an arrest may be executed by unlawful means, such as the unreasonable use of force, which the defendant is not prohibited from opposing. As such, instructing the jury on the uncharged defense of resisting arrest hinders his ability to present a theory of self-defense and denies him an affirmative defense to the sole charge of aggravated battery. In this case, as in English, the combined instructions simultaneously inform the jury that Mr. Ammons was allowed to use force to defend himself against unlawful force and that he was not allowed to use any force in the course of an arrest. The combined instructions thus inherently risk misleading the jury into concluding that Mr. Ammons' use of force, including in self-defense, necessarily qualified as resisting because it occurred during an arrest and therefore could not have been justified. The prejudicial... You're saying it basically evaporates as defense. Exactly, Your Honor. That's precisely the problem here. The prejudicial effect of the inherently confused jury instructions given in this case was also exacerbated by the prosecutor's numerous improper remarks during the closing and rebuttal argument. The most egregious of those remarks was the prosecutor's declaration that a person could not resist even an unlawful act of a police officer. The prosecutor also told the jury without qualification that a person certainly cannot fight or struggle with a police officer. Those remarks obviously run afoul of the legal principles set forth by the self-defense instructions themselves as well as in Beeble v. Bailey that a person can use force against an officer who uses unlawful force or excessive force regardless of whether it occurs in an arrest scenario. In addition, defense counsel's failure to challenge those misstatements of law and the prosecutor's many other improper remarks was indefensible. Moreover, the jury instructions taken as a whole did not fully, fairly, and comprehensively inform the jury of applicable law. When the jury sent out its fifth question, basically asking if the right of self-defense survives in an arrest scenario, it also told the court, if we already have this direction, please provide the sheet again. It is thus clear that without an instruction explaining that a person's right of self-defense survives in an arrest scenario where an officer uses excessive force, neither this jury nor any other can be reasonably expected to define that principle of law in the face of the seemingly contradictory resisting arrest and self-defense instructions. It was thus incumbent upon the court to provide the jury with an instruction to clarify that issue. Contrary to the position that was taken by the prosecutor and the trial court in this case, Bailey makes clear that the jury's questions should have been answered in the affirmative, and yet the prosecutor and the court seem to blaze right over that principle of law, making the exact same mistake that the combined instructions can cause a jury to make. So there was no mechanism here to protect the jury from the inherently misleading nature of these instructions. There was a failure on the part of both the court and defense counsel to resolve that issue. Now, of course, had the trial court not given these seemingly contradictory instructions together in the first place, it would have absolved the need to give a corrective instruction. But once that was done, the jury confusion actually materialized, and a corrective instruction was necessary. Would you be here if there were no question from the jury that everything occurred as it did occur in this case? Would you be raising this issue? Your Honor, yes. This issue demonstrates a serious problem that has occurred in trial courts for quite some time now. This practice of giving the resisting arrest instructions in a case where a defendant has not been charged with that offense is frankly a practice that cannot be reconciled with the principle stated in People v. English that instructions on an uncharged offense should not be given to a jury. The jury's questioning this case. So you're saying that should just be a basic principle? Well, yes, Your Honor. As a basic proposition, as it was discussed in People v. English, instructions regarding an offense that has not been charged is improper. But you're not suggesting that one defendant requests a lesser included instruction together with an issues instruction and a definition instruction. You're not suggesting that would be improper. In this case, the defendant didn't request the lesser included instruction. Yes, Your Honor, that's true. And actually there was no discussion by the trial court in this case as to whether this offense could qualify as a lesser included offense to aggravated battery under the facts of this case. So the notion that an uncharged offense instruction should never be given is only true to the extent that no one has requested that it be treated as a lesser included offense. This is just a situation where the court was trying to please both sides. One side wanted one instruction. The other side said, if you give that, then I want this instruction. And the court acquiesced. Yes, Your Honor. It very much seems like a situation where the court was trying to split the baby. However, in doing so, the court ran afoul of the principle that instructions on an uncharged offense should not be given, especially where there's been no discussion whatsoever regarding whether the facts of the case warrant giving lesser included instructions. And even had that determination been made in this case, the way that the court treated the instructions, by only giving part of them, was improper. I mean, that's not seen anywhere else in Illinois law where a trial court is giving only some instructions related to a lesser included offense and not all of them. Additionally, this practice of giving instructions related to an uncharged offense that has not been deemed a lesser included offense is not seen anywhere else in Illinois law. This is a very anomalous situation that occurs in the context of aggravated battery cases. This issue was preserved? Your Honor, I think... There was an objection at trial. Was it preserved in a post-trial motion? The issue of whether the jury instructions were proper was preserved to an extent. Trial counsel objected to the resisting arrest instructions being given at all. So, in that sense, yes, the instruction issue was preserved. However, the issue of whether there should have been corrected instruction later on was not preserved. And so, that needs to be reviewed under an ineffective systems of counsel framework, which is discussed in Issue 5. And therefore, Justice Holdred's question about the jury's inquiries goes to prejudice and it makes it easier for DU to show that there was some prejudice or even structural error here. Yes, Your Honor. And really, the jury's question in this case, getting back to that question, it really helped to illustrate the precise issue. Well, it's a plus for your argument. Absolutely, Your Honor. Yes, it's always better when we can talk about actual jury confusion. We can demonstrate that there was jury confusion as opposed to just discussing the potential for jury confusion. Notably, though, in People v. English, there was no actual jury confusion that materialized. That case turned on the inherent risk of jury confusion and the prejudicial effect of that, which is caused by giving those combined instructions. It would seem that the confusion, any confusion that the jury had would have been exacerbated when the trial courts instructed the jury to disregard the testimony of the defendant. Do you have any insight into exactly what it was that he was saying needed to be disregarded? Your Honor, that absolutely was one of the many other errors that occurred in this case, which certainly contributed, I think, to the jury's confusion. With respect to what exactly the court was referring to, Mr. Amos can only speculate. As a legal practitioner, looking at his remarks that immediately preceded the State's objection, the likely guess would be that the State was objecting to his very last piece of that statement, that that's the truth. Obviously, when a person asserts that their testimony is the truth, that's something that I think most legal practitioners would find objectionable. Was it objectionable on relevancy grounds? Probably not, but that was the objection that the State raised that the court sustained. Counsel, just two minutes. The issue is that the jury is not a group of legal practitioners. Okay, what could the basis of the objection have been? The basis of the objection could have been that it was some sort of legal conclusion or something of that nature, regarding what the truth is and what is not, some sort of ultimate factual conclusion, perhaps. But again, the fact that as a legal practitioner... But the defendant's testifying, right? So that's the truth. When he's given the oath to testify, what does he say? That he is, in fact, going to testify to the truth. So, I mean, it's... Your Honor, I agree that at least it was not true. It might be redundant to his oath, is all. Exactly, Your Honor. However, defense counsel did not make that argument. Defense counsel did not in any way attempt to defend the defendant when the prosecutor raised this groundless relevancy objection or to discuss with the court exactly what it meant in telling the jury to disregard the last statement, which was essentially the sum of the defendant's self-defense theory. So the fact that defense counsel made absolutely no effort to address not only the prosecutor's objection... Could there have been a comment arguably construed on an instruction to disregard if it goes to that's the truth, that the trial court is actually making credibility, improper credibility determination? Yes, Your Honor. Absolutely. Well, it seems like it's very possible that the jury might have thought that he was striking the part immediately before that that said that I defended... The only way I could defend myself was to bite him. Yes, absolutely, Your Honor. That's the crux of that issue is that all of the four sentences that Mr. Ammon said before the court gave that instruction went to the heart of his self-defense claim. And the trial court's vague admonition could have easily contributed to the jury's confusion and caused them to disregard, at least in large part, his claims directly related to the theory of self-defense. Should have said overruled, move on. Had the court said that, then that particular issue... Issue was gone. The first thing the court should have said is grounds. I would agree with that, Your Honor. To make a better record. May I briefly conclude? Yes. The combination of inherently confusing jury instructions, unchallenged and improper prosecutorial remarks, and failure to answer the jury's legal question created the impression that aggregated badly to a peace officer is a strict liability offense in any arrest scenario. As such, Mr. Ammons was deprived of his right to a fair trial. He asked that this court remand this cause for a new trial and apply for $145 in pretrial custody credit. Thank you. Thank you, Ms. Contello. Ms. Raymond. Good morning. Good morning. May it please the Court and Honors. My name is Stephanie Raymond. I will be representing the people of the state in this matter. However, I will be arguing on behalf of Dawn Duffy, who was the author of this brief. So she did the brief? Huh? She did the written brief. Yes, she did. This is her case, and I'm just presenting it for argument. All right. Just to address some of the issues are sort of all kind of rolled into one, but just to quickly just specifically, it's the people's position that the trial court did not use its discretion. In this case, the defendant requested a self-defense instruction, and the people objected and in response presented these jury instructions. And it's the people's position that these instructions don't speak to resisting arrest, only that they speak to the force that could be used by the defendant in that situation, that the use of force and a person's lack of authority to use force to resist arrest. Just to discuss English briefly, in that case, the trial court erred in instructing the jury on resisting because the basis for the aggravated battery in that situation was an altercation that occurred long after he had been arrested. In this case, the altercation and the action of the defendant fighting the officer occurred while they were trying to arrest him. So that would be the difference here. To speak to some of the other points, defense counsel acquiesced to the responses of the trial court to these questions by not objecting, but also the defendant provided a response for the questions the trial judge actually consulted him. And to speak to Bailey, the defendant cites Bailey, however, the trial court concluded that there was not excessive force by the police. Regarding the closing arguments and comments by the prosecutor, the trial court did admonish the jurors about the closing arguments and that they were not to be considered as law. Are there no other questions? Thank you, Ms. Raymond. Ms. Cantala, any rebuttal? Your Honor, counsel mentioned that the resisting arrest instructions given in this case speak to Mr. Raymond's use of force and his lack of authority to resist an arrest. That statement demonstrates the problem with giving those instructions in this context. The issue in this case is not whether Mr. Raymond had the authority to resist an arrest, it's whether the officer used unlawful force in effecting the arrest, so as to justify Mr. Raymond's responsive use of force. It's completely irrelevant whether his conduct qualified as resistance. The important issue is whether the officer's conduct was such that it justified Mr. Raymond's response. Additionally, Your Honor, regarding people versus English, the facts of that case are distinguishable. However, this court's reasoning is unaffected by the facts on which that case can be distinguished. The rationale for holding a jury should not be instructed on uncharged offenses was based on the prejudicial effect of that practice and the potential for jury confusion. It was not based on the fact that the defendant in that case had already been placed under arrest at the time he allegedly got to the officer. Additionally, the response that counsel refers to, defense counsel having provided in response to the jury's fifth question, was not a responsive answer. It told the jury, we're not going to answer your question, keep deliberating. The jury in this case struggled to reach a unanimous verdict. They came back multiple times with questions. They came back with a hung jury at a certain point, where there was discussion of giving them a print instruction. So it's clear that the jury was struggling with this legal issue. Defense counsel did not provide any sort of responsive answer. He merely asked us to be non-answer that the trial court and prosecutor thought was appropriate, which was not an objectively reasonable decision on defense counsel's part, especially where he stated on the record, I don't really understand the jury's fifth question. That clearly was not a decision made based on a reasonable judgment, so it could not have been objectively reasonable, and as has been discussed at length, it was clearly prejudicial in this case. Unless this court has further questions. No. Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.